AE

KC **FILED**

NOV 0 5 2007
NOV 05 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

FIRST SPECIALTY INSURANCE
CORPORATION,

        Plaintiff,

v.

SMURFIT-STONE CONTAINER
ENTERPRISES f/k/a SMURFIT-STONE
CONTAINER CORPORATION,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

07CV6248
JUDGE GOTTSCHALL
MAGISTRATE JUDGE COX

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, First Specialty Insurance Corporation, by and through its

attorneys, LITCHFIELD CAVO LLP, pursuant to 28 U.S.C. § 2201, and for its Complaint

for Declaratory Judgment against Defendant, Smurfit-Stone Container Enterprises f/k/a

Smurfit-Stone Container Corporation, states as follows:

### THE PARTIES

1.    First Specialty Insurance Corporation ("FSIC") is a Missouri corporation

with its principal place of business in Overland Park, Kansas.

2.    Defendant Smurfit-Stone Container Enterprises f/k/a Smurfit-Stone

Container Corporation ("Smurfit") is a Delaware corporation with its principal place of

business and corporate headquarters located in Chicago, Illinois.

3.    Jurisdiction over this matter is predicated upon 28 U.S.C. § 1332, based

on diversity of citizenship.  The amount in controversy exceeds $75,000.

4.    Venue of this action is predicated upon 28 U.S.C. § 1391.

## NATURE OF THE COMPLAINT

5.     This complaint seeks a declaration regarding insurance coverage claimed by Smurfit in connection with an underlying bodily injury lawsuit brought by Peter Adams ("Adams") in the Circuit Court of the Fourth Judicial Circuit, Duval County, Florida.

6.     FSIC disputes that it has any obligation pursuant to the relevant policy of insurance to defend or indemnify Smurfit in connection with the claim as more fully set forth below.

## EVENTS GIVING RISE TO THE DISPUTE

7.     The instant claim relates to Smurfit's demand for coverage in relation to injuries suffered by Adams as a result of a fall on or about December 2, 2002 at a Smurfit facility located at 9469 Eastport Road in Jacksonville, Florida (the "Smurfit Facility").

8.     Adams was injured at the Smurfit Facility when he fell from the back of a trailer as he was in the process of inspecting it and moving it to the loading dock at the Smurfit Facility.

9.     In December 2006, Adams filed a complaint, styled as *Peter Adams v. Stone-Container Corporation n/k/a Smurfit-Stone Container Enterprises, Inc.*, Case No. 2006 CA 008620 in the Circuit Court of the Fourth Judicial Circuit, Duval County, Florida. A copy of the Complaint filed by Adams (the "Adams Complaint") is attached hereto as Exhibit A.

10.     Adams alleges in the Adams Complaint that Smurfit's negligence caused or contributed to his injuries and, therefore, he seeks to recover damages from Smurfit .

11.     Upon information and belief, prior to his injury, Adams was employed by

an entity known as Core Carriers, which entity was purchased by National Freight, operating thereafter as National Freight dba Core Carriers.

12.　　Adams alleges in the Adams Complaint that, at all relevant times, he was an employee of National Freight.

13.　　According to the allegations of the Adams Complaint, Adams was injured while working at the Smurfit Facility according to the terms of a manpower leasing contract between Stone Container Corporation and Core Carriers.　A copy of the Contract is attached hereto as Exhibit B.

14.　　Upon information and belief, Smurfit contends that it is entitled to assert and/or enforce the terms of the Contract by virtue of a corporate transaction and/or its corporate relationship with Stone Container Corporation.

15.　　In June 2007, Smurfit sent a letter to National Freight demanding that it defend Smurfit with respect to the Adams Complaint.　Smurfit also demanded that FSIC be placed on notice of Smurfit's claim for insurance coverage.　A copy of the June 2007 letter from Smurfit is attached hereto as Exhibit C.

16.　　Upon information and belief, Smurfit's demand is based on the terms of the Contract relating to insurance obligations to be met by Core Carriers, obligations allegedly now owed by National Freight, Inc. dba Core Carriers.

17.　　Smurfit contends that the terms of the Contract entitle it to coverage with respect to the Adams Complaint as an additional insured under a policy of insurance issued by FSIC to Vineland Construction, Inc., a policy on which National Freight, Inc. dba Core Carriers is also listed as a named insured.

18.　　FSIC disputes that Smurfit is entitled to coverage with respect to the

3

Adams Complaint or in any other manner relating to Adams' injuries.

## THE FSIC POLICY

19.     FSIC issued Policy No. IRG 49032 (the "Policy") to Vineland Construction, Inc. of Hebron, Ohio for the policy period of October 1, 2002 to October 1, 2003. A copy of the Policy is attached hereto as Exhibit D.

20.     Subject to the applicable terms, conditions and exclusions, the Policy provides commercial general liability coverage with limits of liability of $1,000,000 per occurrence. The coverage provided applies in excess of a $50,000 per occurrence Self-Insured Retention ("SIR"). The SIR is eroded by both defense and loss payments and does not reduce the limits of liability.

21.     The Policy contains an endorsement which adds 29 additional entities to the Policy as named insureds. Included in that list of additional parties is "National Freight, Inc. dba Core Carriers."

22.     Employees of the named insureds also qualify as insureds under the Policy in relation to acts within the scope of their employment by the named insured or while performing duties related to the conduct of the insured's business.

23.     The relevant insuring agreement found in the Policy provides that FSIC will pay those sums that the insured becomes legally obligated to pay as damages to which the insurance applies which arise out of "bodily injury" that occurs during the policy period and is caused by an "occurrence." The insuring agreement also provides that FSIC has the right and duty to defend any "suit" seeking those damages.

24.     The coverage afforded by the Policy is limited by endorsement, Form CG 21 44 07 98 (hereinafter the "Designated Premises Endorsement") to covered damages

arising out of the ownership, maintenance, or use of the premises shown in the Schedule listed on the endorsement and to operations necessary or incidental to those premises. The pertinent version of the Designated Premises Endorsement includes the phrase "as per on file with the company" in the Schedule.

25.    The Smurfit Facility is not listed as a designated premises on the Designated Premises Endorsement nor is it listed in FSIC's file relating to the Policy.

26.    The Policy contains the following exclusions, quoted in pertinent part, that are applicable to Smurfit's demand for coverage:

e.    Employer's Liability

"Bodily injury" to:
(1)    An "employee" of the insured sustained in the "workplace";
(2)    An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or
(3)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs (1) or (2) above.

This exclusion applies:
(1)    Whether the insured may be liable as an employer or in any other capacity; and
(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

g.    Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

*    *    *

27.    FSIC's obligations under the Policy are affected by the inclusion of an

endorsement regarding coverage afforded to additional insureds (hereinafter the "Additional Insured Endorsement"). This endorsement, consisting of form CG 2010 10 93, provides in relevant part as follows:

### SCHEDULE

Name of person or organization:

Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

\*      \*      \*

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

28.    FSIC's coverage obligations are also affected by an insured's performance of its obligations under the Policy. In particular, the insured is required to provide timely notice of "occurrences", "claims" and "suits" pursuant to the following language:

2. Duties in the Event of "Occurrence", "Claim" or "Suit"

a.    You must see to that the Claims Service Company is notified promptly of an "occurrence" which may result in a "claim." Notice should include:

(1)    How, when and where the "occurrence" took place; and

(2)    The names and addresses of any injured persons and witnesses.

b.    You must see to it that we are notified promptly of an "occurrence" which may result in a "claim," that is likely to involve this policy or which involves fatalities, spinal injuries, head injuries, loss of limb, and other serious "bodily injury," irrespective of liability or reserve. Notice should include:

    (1)     How, when and where the "occurrence" took place; and

    (2)     The names and addresses of any injured persons and witnesses.  Failure to notify us of any act or omission which, at the time of its happening, did not appear to give rise to a "claim" hereunder, shall not prejudice such "claim."

You and any other involved insured must also:

    (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

    (2)     Authorize us to obtain records and other information;

    (3)     Cooperate with us in the investigation or settlement of the claim or "suit"; and

    (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

c.    If "claim" is made or "suit" is brought against any Insured involving this policy, you must see to it that we receive prompt written notice of the "claim" or "suit."

29.    FSIC's coverage obligations under the Policy are also affected by the availability of other insurance through the following pertinent language of Condition 4:

4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.    Primary Insurance

This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

b.    Excess Insurance

This insurance is excess over:

    (1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        \*      \*      \*

        (d)    If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury and Property Damage Liability.

    (2)    Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations for which the insured has been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (2)    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains,

whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## COUNT I
### (No Coverage for Smurfit - No Contractual Right to Coverage)

30.     FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶30 as though the same were fully set forth herein.

31.     Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

32.     Smurfit bases its demand for coverage upon the Contract and the Policy.

33.     Smurfit is not a party to the Contract and, therefore, its alleged entitlement to the insurance obligations owed thereunder must arise, if at all, through its corporate relationship or a corporate transaction with Stone Container Corporation.

34.     Smurfit has not demonstrated that it is entitled to make any demands regarding insurance obligations pursuant to the Contract and/or under the Policy.

35.     To the extent that Smurfit cannot demonstrate that it is entitled to assert or enforce the terms of the Contract relating to insurance coverage, no coverage will be owed under the Policy for any damages arising from Adams' accident at the Smurfit Facility.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.     Declaring that FSIC has no duty or obligation under the Policy to defend or

9

indemnify Smurfit with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams;

B.    Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.    For such other declaratory relief as the Court deems appropriate.

### COUNT II
### (No Coverage for Smurfit - The Designated Premises Endorsement)

36.    FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶36 as though the same were fully set forth herein.

37.    Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

38.    Pursuant to the Designated Premises Endorsement, the Policy provides coverage only for damages arising from the ownership, maintenance, or use of premises shown in the Schedule listed on the endorsement and to operations necessary or incidental to those premises.    The Schedule defines the designated premises by use of the phrase "as per on file with the company."

39.    The Smurfit Facility is not listed in the Schedule and is not otherwise on file with FSIC and, therefore, it is not a designated premises for which coverage is afforded under the Policy.

40.    Therefore, there is no coverage under the Policy for any damages arising from Adams' accident at the Smurfit Facility.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.    Declaring that FSIC has no duty or obligation under the Policy to defend or indemnify Smurfit with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams;

B.    Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.    For such other declaratory relief as the Court deems appropriate.

## <u>COUNT III</u>
**(No Coverage for Smurfit - The Aircraft, Auto or Watercraft Exclusion)**

41.    FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶41 as though the same were fully set forth herein.

42.    Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

43.    As alleged in the Adams Complaint, his injuries arose during the course of inspecting and moving a trailer at the Smurfit facility.

44.    Pursuant to the Aircraft, Auto or Watercraft Exclusion, the Policy does not apply to "bodily injury" arising out of the ownership, maintenance, use or entrustment to others of any "auto" owned or operated by or rented or loaned to <u>any</u> insured.  Use includes operation and "loading or unloading."

45.    The trailer from which he fell qualifies as an "auto" which was being used

11

or operated by Adams and/or Smurfit, each of whom are alleged to be insureds under the Policy, at the time of his fall.

46.    Therefore, the Aircraft, Auto or Watercraft Exclusion bars coverage under the Policy for any damages incurred by Smurfit arising from Adams' accident at the Smurfit Facility.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.    Declaring that FSIC has no duty or obligation under the Policy to defend or indemnify Smurfit with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams;

B.    Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the  Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.    For such other declaratory relief as the Court deems appropriate.

### COUNT IV
### (No Coverage for Smurfit - The Employer's Liability Exclusion)

47.    FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶47 as though the same were fully set forth herein.

48.    Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

49.    As alleged in the Adams Complaint, he was an employee of Core Carriers or National Freight, Inc. dba Core Carriers at the time of the accident.

50.     As alleged in the Adams Complaint, he was performing work at the Smurfit Facility pursuant to the Contract which set forth the terms under which employees were leased to Smurfit to work at the Smurfit Facility at a specified rate per man-hour.

51.     Pursuant to the Employer's Liability Exclusion, the Policy does not apply to "bodily injury" to an "employee" of the insured sustained in the "workplace" or to "bodily injury" to an "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business.

52.     As an employee leased by Smurfit from Core Carriers and/or National Freight, Inc. dba Core Carriers, Adams qualifies as an "employee" of Smurfit for purposes of coverage considerations under the Policy.

53.     Therefore, Employer's Liability Exclusion bars coverage under the Policy for any damages incurred by Smurfit arising from Adams' accident at the Smurfit Facility.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.     Declaring that FSIC has no duty or obligation under the Policy to defend or indemnify Smurfit with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams;

B.     Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the  Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.     For such other declaratory relief as the Court deems appropriate.

## COUNT V
### (No Coverage for Smurfit - Breach of Notice Obligations)

54.    FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶54 as though the same were fully set forth herein.

55.    Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

56.    As alleged in the Adams Complaint, his injuries arose from a fall in December 2002.

57.    The Adams Complaint was filed in December 2006 in relation to injuries arising from the December 2002 accident.

58.    First notice to FSIC of the December 2002 accident and of the Adams Complaint was not provided until June 2007.

59.    Pursuant to the notice provisions of the Policy, an insured is required to provide timely notice of "occurrences", "claims" and "suits."

60.    Smurfit has breached the notice obligations under the Policy by failing to provide proper notice with respect to either the December 2002 accident or the Adams Complaint.

61.    Therefore, there is no coverage under the Policy for any damages arising from Adams' accident at the Smurfit Facility.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.    Declaring that FSIC has no duty or obligation under the Policy to defend or indemnify Smurfit with respect to the Adams Complaint or for any other

claims or demands made in relation to the injuries suffered by Adams;

B.    Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the  Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.    For such other declaratory relief as the Court deems appropriate.

## COUNT VI
### (No Coverage for Smurfit - Voluntary Payments/Pre-Tender Costs)

62.    FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶62 as though the same were fully set forth herein.

63.    Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

64.    The Adams Complaint was filed in December 2006 in relation to injuries arising from the December 2002 accident.

65.    First notice to FSIC of the December 2002 accident and of the Adams Complaint was not provided until June 2007.

66.    Pursuant to the term of the Self-Insured Retention Endorsement, if a "claim" or "suit" appear likely to exceed the Self-Insured Retention, no "defense costs" shall be incurred on behalf of FSIC without the prior consent of FSIC.

67.    FSIC was not provided notice of, and did not consent to, any costs incurred by Smurfit prior to June 2007.

68.    Therefore, to the extent that there is coverage under the Policy at all, there is no coverage under the Policy for any costs incurred by Smurfit in relation to the

December 2002 accident and/or the Adams Complaint in excess of the Self-Insured Retention.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.   Declaring, to the extent that FSIC has any duty or obligation under the Policy at all, the extent of coverage to be provided to Smurfit under the Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

B.   For such other declaratory relief as the Court deems appropriate.

## COUNT VII
### (Excess or Limited Coverage for Smurfit - Other Insurance)

69.   FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶69 as though the same were fully set forth herein.

70.   Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and the injuries suffered by Adams due to a fall at the Smurfit Facility.

71.   As alleged in the Adams Complaint, his injuries arose from a fall in December 2002 during the course of inspecting and moving a trailer at the Smurfit Facility.

72.   The trailer from which he fell qualifies as an "auto" which was being used or operated by Adams and/or Smurfit at the time of his fall.

73.   To the extent that the Aircraft, Auto or Watercraft Exclusion does not bar coverage under the Policy outright with respect to any damages incurred by Smurfit arising from Adams' accident at the Smurfit Facility, then pursuant to Condition 4., the

Policy applies in excess of other applicable insurance.

74.    In the alternative, to the extent that the Aircraft, Auto or Watercraft Exclusion does not bar coverage under the Policy outright and the Policy does not apply in excess of other applicable insurance, then pursuant to Condition 4 of the Policy, the obligations under the Policy are to be shared with other applicable coverage available to Smurfit in relation to this matter.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.    Declaring that FSIC has no duty or obligation under the Policy to defend or indemnify Smurfit with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams;

B.    Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.    For such other declaratory relief as the Court deems appropriate.

**COUNT VIII**
**(Extent of Coverage for Smurfit - Coverage Only Liability Arising from Named Insured's Work)**

75.    FSIC incorporates and restates the allegations stated in ¶¶1 through 29 as and for ¶75 as though the same were fully set forth herein.

76.    Smurfit seeks defense and indemnity coverage under the Policy as an additional insured in relation to the Adams Complaint and its alleged liability in relation to the injuries suffered by Adams.

17

77.    To the extent that coverage for Smurfit is to be provided under the Policy as an additional insured, it is provided only in relation to liability it incurs in relation to Core Carriers' or National Freight, Inc. dba Core Carriers' work under the Contract. Coverage is not provided under the Policy in relation to Smurfit's liability that arises from its own negligence or the negligence of any party other than a party qualifying as a named insured under the Policy.

78.    To the extent that Martin's injuries did not arise from the negligence of a party qualifying as a named insured, no coverage is available under the Policy to Smurfit for any damages it incurs in relation to the Adams Complaint and its alleged liability in relation to the injuries suffered by Adams.

WHEREFORE, the Plaintiff, FSIC, requests a judgment pursuant to 28 U.S.C. § 2201 against Defendant Smurfit declaring and awarding the following relief:

A.    Declaring that FSIC has no duty or obligation under the Policy to defend or indemnify Smurfit with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams;

B.    Declaring, in the alternative, the extent of coverage to be provided to Smurfit under the Policy with respect to the Adams Complaint or for any other claims or demands made in relation to the injuries suffered by Adams; and

C.    For such other declaratory relief as the Court deems appropriate.

Dated:    11/5/07

                        FIRST SPECIALTY INSURANCE CORPORATION

                        By: _____
                            One of its Attorneys

Brian M. Reid (ID # 6216739)
**LITCHFIELD CAVO LLP**
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
(312) 781-6617 (Reid)
(312) 781-6630 (Fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

FIRST SPECIALTY INSURANCE            )
CORPORATION,                         )
                                     )
                 Plaintiff,          )
                                     )
v.                                   )
                                     )
SMURFIT-STONE CONTAINER              )
ENTERPRISES f/k/a SMURFIT-STONE      )
CONTAINER CORPORATION,               )
                                     )
                 Defendant.          )

**COMPLAINT FOR DECLARATORY JUDGMENT**

# EXHIBIT A

12/11/2006  14:46    618465·

This fax was received ... GFI FAXmaker fax server. For more information, ... http://www.gfi.com

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR DUVAL COUNTY, FLORIDA

CASE NO:
16: 2006-CA- 008620        -XXXX-MA·
DIVISION:

PETER ADAMS,
    PLAINTIFF,

DIVISION CV-H

Vs

STONE CONTAINER CORPORATION,
n/k/a SMURFIT-STONE CONTAINER
ENTERPRISES, INC., a business entity
licensed to do, and doing, business in the
State of Florida,
    DEFENDANT.

## COMPLAINT

PLAINTIFF, *PETER ADAMS*, by and through his undersigned counsel, sues the Defendant and alleges:

1.    This is an action for damages in excess of FIFTEEN THOUSAND DOLLARS and NO 100 ($15,000.00), exclusive of interest and costs.

2.    At all times material herein, the Plaintiff was and is a resident of Duval County, Florida. Defendant, STONE CONTAINER CORPORATION n/k/a SMURFIT-STONE CONTAINER ENTERPRISES, INC. (hereinafter referred to as Defendant Stone Container) was and is a business entity, with its principal location located in Jacksonville, Duval County, Florida.

3.    On or about December 2, 2002, Defendant, STONE CONTAINER, owned, operated and controlled the facility known as Seminole Mill (Containerboard Mill) located at 9469 Eastport Road, Jacksonville, Duval County, Florida 32218.

4.    On or about December 2, 2002, the Plaintiff, PETER ADAMS, was an employee of National Freight, pursuant to a Lease Agreement between the Defendant and National Freight, and was assigned as a "trailer jockey/spotter" at the Seminole Mill location referenced above.

12/11/2006  14:45    618452    8    Get FAXmaker fax server. For more information... http://www.gfi.com    This fax was received

## COUNT ONE – NEGLIGENCE – STONE CONTAINER

5.    The Plaintiff, PETER ADAMS, re-alleges the facts contained in Paragraphs 1 through 4 above and is entitled to relief against the Defendant upon the following facts:

(a)    At that time and place, as owner and operator of said facility, the Defendant, STONE CONTAINER, had the right, power and duty to maintain, operate and control the Seminole Mill facility and grounds in and around said facility located at 9469 Eastport Road, Jacksonville, Duval County, Florida.  The Defendant thereby had the duty to maintain the said facility and its grounds in a reasonably safe and serviceable condition for the use by its employees and any and all business invitees of said facility.

(b)    At all times material to this action, Plaintiff, PETER ADAMS, was acting in his capacity as a "trailer-jockey/spotter" at Defendant's location and as such was a business invitee and/or agent of the Defendant.

c    The Defendant, notwithstanding its duty as aforesaid, did not maintain the facility and/or grounds in a reasonably safe and serviceable manner, but, on the contrary, negligently and wrongfully (1) failed to provide adequate lighting (2) failed to provide ladders and/or handrails to adequately access the trailers being inspected from the platform where the trailers are parked.

(d)    The aforesaid dangerous and unsafe conditions of the area and grounds existed on the 2nd day of December, 2002, and had existed for a long enough period of time that the Defendant knew, or by the exercise of reasonable case should have known, of the existence of said dangerous and unsafe conditions.

(e)    The Defendant knew, or by the exercise of reasonable diligence should have known, that the area where the trailers were being inspected was not adequately lit and that the access to the trailers from the platform was hazardous.

(f)    The Defendant failed to take any action to warn the Plaintiff or other agents/employees/invitees of the hazards presented thereby and the location thereof, or in the alternative failed to provide adequate lighting, handrails/ladders, walkways, prior to the Plaintiff's slip and fall.

6.      On or about December 2, 2002, the Plaintiff, while in the course and scope of his duty as a "trailer jockey/spotter" was caused to slip and fall off of a trailer into a concrete wall and onto the ground, due to the inadequate lighting and the non-existence of any handrails/ladders in the area where the Plaintiff was working.

7.      As a direct and proximate result of the carelessness and negligence of the Defendant, which is set forth in the paragraphs above, Plaintiff, PETER ADAMS, fell to the ground and thereby suffered injuries both temporary and permanent in and about the body of the Plaintiff, including but not limited to personal injury, pain and suffering, disability, mental anguish, aggravation of a pre-existing medical condition, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment. All said losses are either permanent or continuing in nature and the Plaintiff will suffer said losses in the future.

   *WHEREFORE*, the PLAINTIFF, PETER ADAMS, demands judgment against the Defendant for damages and costs, and also demand trial by jury of all issues so triable by law.

                                          SELINGER, FLETCHER & TAYLOR, P.A.

                                          BY _____
                                          RANDALL K. ERLER, ESQUIRE
                                          Florida Bar No.: 0142931
                                          Attorney for Plaintiff
                                          The Blackstone Building
                                          233 East Bay St., Suite 1020
                                          Jacksonville, Florida 32202
                                          (904) 598-0900
                                          (904) 598-0905 - FAX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FIRST SPECIALTY INSURANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SMURFIT-STONE CONTAINER ENTERPRISES f/k/a SMURFIT-STONE CONTAINER CORPORATION, | ) ) ) ) |
| Defendant. | ) |

### COMPLAINT FOR DECLARATORY JUDGMENT

# EXHIBIT B

## CONTRACTOR'S AGREEMENT

Contract No  03-124-28
Date  12/6/2002

**Stone Container Corporation** a Delaware corporation (the "Company"), with offices located at 9469 Eastport Road, Jacksonville, Florida  32218 and   with offices located at **Core Carriers** P.O. Box 26420 Jacksonville, Florida  32226 ("Contractor"), for and in consideration of the mutual covenants and undertakings hereinafter contained, agree as follows:

1.      Contractor agrees to complete and shall complete the work described in, and in accordance with and subject to the Description of Work, Drawings, Specifications and Miscellaneous Information as set forth below, subject to any written Change Orders (additions or deletions) agreed to by the parties (the work described in this Section 1 hereinafter referred to as the "Project"), all in accordance with the terms and conditions hereof.

A.  DESCRIPTION OF WORK:
Blanket contract for year 2003 to provide terms and conditions for Contracts and releases to annual blanket contract.

B.  DRAWINGS:
Reference Number      Title      Prepared By      Date

C.  SPECIFICATIONS: The Project specifications shall include the provisions of      Paragraphs 4 and 5 below.

Reference Number      Title      Prepared By      Date

D.  MISCELLANEOUS INFORMATION:
See individual Contract/release for detailed work scope.

All drawings, specifications and other documents referred to in this Section 1 are by this reference incorporated herein and made a part hereof.

2.      The Project shall be commenced promptly, and pursued diligently and continuously thereafter, and shall be substantially completed not later than 12/31/03,  Time is of the essence of this Agreement. The Project shall be completed as expeditiously as the combined efforts of Company and Contractor will permit.  Contractor shall exert its best efforts to expedite deliveries of materials, equipment, machinery, etc., that it is furnishing, and to schedule the required labor for which it is responsible, shall staff the job with knowledgeable supervisory personnel, shall plan the job, with the approval of Company, so as to minimize any down-time of its or Company's equipment and machinery, and shall, to the best of its ability, employ sufficient trained craftsmen to maintain the approved schedule.

3.      Company agrees to pay and shall pay Contractor for performance of this Agreement, the sum of $275 PER NEW (the "Contract Price"), subject to any short-referenced Change Orders in the following manner.  In the event the Contract Price is determined, in whole or in part, on a time and materials basis, the Company reserves the right to audit Contractor's books and records relating to the Project in order to verify the amount of any invoice for Progress Payments and/or Final Payment.  Invoices for Progress Payments of the percentage of the Project completed, and/or previously approved additional work beyond the scope of the Project, may be submitted monthly.  Provided Contractor is not in default, Company shall pay all approved invoices submitted for Progress Payments by Contractor up to ninety percent (90%) of the Contract Price, as adjusted for Change Orders. All invoices must reference the above Contract Number.

Upon receipt of written notice from Contractor that the Project is completed and ready for inspection and acceptance, Company shall promptly make such inspection and, upon finding the Project completed and acceptable, and this Agreement fully performed, Company will issue Final Approval thereof.  Final Payment, including all retainages, shall be made upon application by Contractor after Company's Final Approval of the Project, provided Contractor is not in default.

1

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

4. Company will require the submission of the following documents from all contractors:

    (a)    Contractor's Affidavit, setting forth the entire projected cost for the Project, including the names of suppliers and materialmen and the cost of the material supplied, and the names of all subcontractors and the total cost of work to be performed by each of them.

    (b)    Signed contracts from all subcontractors and materialmen, or in the alternative, written proposals detailing the scope of the work to be performed by them and the dollar amount of their contributions.

    (c)    The submission of Lien Waivers by the Contractor and all subcontractors and materialmen prior to any Progress Payment or Final Payment. Company may withhold any monthly Progress Payment or Final Payment due under this Agreement pending receipt from the Contractor of such Lien Waiver by the Contractor and each of its subcontractors, agents, suppliers, materialmen and other third parties furnishing work, equipment, supplies or material at Contractor's request, stating that workmen, laborers, suppliers and materialmen have been paid in full and that there are no unpaid claims of any description in connection with the equipment, materials or work provided under this Contract.

Contractor agrees and warrants that the payments made by Company hereunder shall be applied first to payment of the cost and expense of labor, materials and services incurred by, for, and on behalf of Contractor, its subcontractors and agents hereunder. Contractor shall defend, indemnify and hold Company harmless against any cause of action, liability, damage, fine or penalty claimed, sought or arising from any breach by Contractor of the provisions hereof, regardless of whether Contractor has been compensated in full by Company, provided, however, that the amount of any such indemnity pursuant to this Section 4 shall be limited to the Contract Price, increased by the amount of any Change Order increases.

5. For and in consideration of the sum of $10.00 in hand paid to Contractor by Company, the receipt and sufficiency of which is hereby acknowledged by Contractor, and in consideration of Company's entering into this Agreement, Contractor hereby agrees to indemnify, defend, save and hold Company, its parent, subsidiary and affiliated entities and their respective directors, officers, employees and agents, harmless from any and all claims, actions, causes of action, lawsuits, costs, expenses (including reasonable attorney's fees and expenses), damages and liabilities incurred or arising as a result of the performance or non-performance by Contractor of its duties hereunder or in any way arising from the contract or its performance, whether or not named in whole or in part by any act, omission or default of the Company, its employees or agents, to the fullest extent allowed by applicable law; provided, however, that if the validity or enforceability of this Section requires a monetary limitation on the extent of the indemnification, the amount of any such indemnification pursuant to this Section 5 shall be limited to $2,000,000 or the Contract Price, whichever is greater. This indemnification expressly includes claims made by Contractor's employees for work related injuries. Contractor hereby acknowledges that specific consideration has been paid for this indemnification. Upon request by Company at any time, and at Company's sole expense, Contractor shall promptly execute and deliver to Company a Performance and Payment Bond, in favor of Company, securing the full, proper and timely completion of all payments, work and services provided for in this Agreement. Said Performance and Payment Bond shall continue in force and effect for a time satisfactory to Company, and in no event shall coverage be terminated before this Agreement has been completely performed. The Surety on said Performance and Payment Bond shall be a corporation satisfactory to Company and authorized to do business in the state where the Project is to be completed.

6. Contractor shall, at its sole expense, procure and maintain in full force and effect throughout the term of this Agreement, through companies and agencies satisfactory to Company, the following insurance:

    (a)    Worker's Compensation and Employer's Liability Insurance in Contractor's name with limits of liability under the Employer's Liability portion of not less than Five Hundred Thousand Dollars ($500,000). The insurance company writing such coverage must provide a waiver of subrogation. In addition, the policy must include "All States" and "Voluntary Compensation" endorsements.

    (b)    Comprehensive General Liability Insurance written on an occurrence form, including Broad Form Contractual Liability Insurance, Contractor's Protective Liability in Contractor's name, Broad Form Property Damage, and Completed Operations endorsement with not less than One Million Dollars ($1,000,000) per occurrence Combined Single Limit. Exclusions for explosion, collapse and underground property (X, C, and U) shall be deleted. Such policy shall name Company as an Additional Insured.

    (c)    Automobile Liability Insurance, written on an occurrence form, with an Employer's Non-Ownership Liability Endorsement in Contractor's name, with not less than One Million Dollars ($1,000,000) per occurrence Combined Single Limit. Such policy shall name Company as an Additional Insured.

2

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

(d)   If the amount payable to Contractor hereunder is in excess of Five Million Dollars ($5,000,000), Owner's Protective Liability Insurance with Company as the named insured with not less than Two Million Dollars ($2,000,000) per occurrence Combined Single Limit. First dollar coverage is to apply. The policy must further name any outside architect or engineer, if engaged for the Project by Company, as an Additional Insured.

(e)   If the Agreement involves environmental work by Contractor, then a One Million Dollar ($1,000,000) Environmental Impairment Liability Policy must be obtained by Contractor.

The insurance policies described in paragraphs (b), (c), and (d) above shall afford Company with primary coverage, irrespective of any other coverage available to or maintained by Company or Contractor, and the Contractor's self-insured retention in paragraphs (b), (c) and (d) above shall not exceed $100,000, for which Contractor hereby expressly assumes responsibility. The insurance companies providing the foregoing coverages shall have a Best rating of "A" or better. Contractor shall be responsible for maintaining insurance covering its personal property used by it in its performance of this Agreement and shall be solely responsible for damage to or loss of same from any cause. Contractor hereby waives, and shall cause its insurers to waive, all rights of subrogation against Company.

BEFORE CONTRACTOR BEGINS WORK UNDER THIS AGREEMENT, TWO CERTIFICATES REPRESENTING THAT THE AFORESAID INSURANCE COVERAGES ARE, IN FACT, IN PLACE, AND THAT SAID COVERAGE IS PRIMARY NOTWITHSTANDING THE EXISTENCE, AMOUNT OR AVAILABILITY OF OTHER COVERAGE, SHALL BE DEPOSITED WITH COMPANY MARKED FOR THE ATTENTION OF: PURCHASING AGENT, COMPANY, AT THE ADDRESS SHOWN ABOVE. Such certificates of insurance shall require at least thirty (30) days prior written notice to Company before cancellation, termination, non-renewal or modification. Contractor must further certify to the aforementioned Purchasing Agent that it has obtained similar Certificates of Insurance from each of its subcontractors before each such subcontractor commences any work under this Agreement. Each subcontractor must be covered by insurance of the same character and in the same amounts as Contractor unless Company and Contractor mutually agree that reduced coverage is adequate due to the nature of the particular subcontract work.

7.      All material and workmanship furnished by Contractor hereunder is deemed warranted by Contractor to be merchantable and fit for the purpose intended and to fulfill and conform to the specifications required by this Project, to be of good quality and workmanship, and sufficient to perform the function and purpose of its ultimate use. Latent defects, omissions or commissions constituting a breach of this warranty are not to be deemed waived by Company's acceptance of the material or performance, and Contractor's warranty shall extend to the time of discovery of such breach notwithstanding any prior inspection by Company. Contractor's warranties shall extend to all consequential damages suffered by Company by reason of Contractor's breach thereof. Materials furnished by Contractor shall be deemed Contractor's property until placed in the Project and accepted by Company.

8.      Contractor shall erect and maintain, at all times, all necessary barricades, barriers, covers, warnings and other safeguards for the protection and safety of all persons rightfully upon the premises wherein Contractor shall be performing any work or shall have placed any tools, materials, equipment or debris. The Contractor shall comply with all applicable local, state and federal safety laws, rules and regulations and shall exercise due care in the performance of the Agreement. Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Project.

9.      By execution of this Agreement, Contractor expressly warrants that all materials to be furnished hereunder will be delivered in conformity to and in compliance with all applicable laws, orders, and regulations of the federal, state or local governments or agencies of such governments, having jurisdiction. In the performance of Contractor's obligations hereunder, Contractor and its subcontractors, and their respective agents, servants and employees shall observe all applicable government laws, regulations and directives, and Contractor shall indemnify, defend, save and hold Company, its parent, subsidiary and affiliated entities and their respective directors, officers, employees and agents, harmless from any and all cost imposed upon any of them as a result of such failure to do so. Contractor is to obtain any required permits for the performance of the Project. Any license fees, excise taxes, sales taxes, retail occupation taxes, use taxes or other imposts applicable to Contractor's undertaking or imposed upon either Contractor or Company by reason thereof, are deemed to be included in the contract sum and shall be payable by Contractor. In the event Company is assessed the amount of any such tax which Contractor has failed to pay, except any tax for which Company has previously claimed exemption, Contractor agrees to indemnify Company against all loss and expense in connection therewith. Contractor agrees to withhold and to pay to the proper governmental authorities Social Security taxes and Unemployment Compensation taxes on behalf of its employees in any and all jurisdictions, as may be required by law, and to hold Company harmless against any claims for non-payment or insufficient payment of same.

10.      Any waiver of strict compliance with any of the provisions of this Agreement shall not be deemed a waiver of any other provisions not so waived or of Company's right to insist on strict compliance thereafter. The provisions hereof are severable, and, in the event any is held to be unenforceable, the remaining provisions will continue in full force and effect.

3

11.     Company, in its absolute discretion, by seven (7) days' written notice to Contractor, may, at any time, terminate this Agreement. In the event of such termination, Company may take possession of the premises and all machinery, equipment, materials, tools and supplies thereof which are then owned by Company, and Company may elect to finish the Project by whatever method it may deem expedient. In the event of such termination, Company shall pay to Contractor such portion of Contractor's fee as shall be equitable, but not less than an amount commensurate with the percentage of work completed at the time of termination. Company shall also reimburse Contractor's costs incurred or accrued to the date of termination directly related to Contractor's performance of the Project. Neither party shall be liable for delays or defaults in the performance of this Agreement due to Acts of God, strikes, fires, accidents or any other causes beyond its control and without its fault or negligence.

12.     Contractor agrees to and shall hold in confidence any and all technical information, processes, designs, products or any other information which Company may, from time to time, designate as a trade secret, confidential or proprietary, and which Contractor learns of in the performance of the Project defined in Paragraph 1, either because of direct or indirect use thereof by Contractor or otherwise. Furthermore, Contractor shall undertake to protect such information from disclosure by its employees, agents or subcontractors, shall not furnish said information to others without Company's prior written consent, and shall hold Company harmless from any damage or loss suffered thereby.

13.     This writing constitutes the entire Agreement between Company and Contractor relating to the Project, and all prior agreements, written and oral, relating to the Project are superseded and governed by the terms hereof. If anything in the materials and documents described in Paragraph 1 and constituting the Project is inconsistent with this Agreement, this Agreement shall govern. Further, this Agreement shall be construed in accordance with the laws of the state in which this Agreement is to be performed. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the day and year first above written.

COMPANY                              CONTRACTOR

Stone Container Corporation

By: _____                 By: _____

Title: Purchasing Manager            Title: VP BUSINESS DEVELOPMENT

Form U00000565 Rev. 5/99

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FIRST SPECIALTY INSURANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SMURFIT-STONE CONTAINER ENTERPRISES f/k/a SMURFIT-STONE CONTAINER CORPORATION, | ) ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

# EXHIBIT C

## TAYLOR, DAY, CURRIE, BOYD & JOHNSON

ATTORNEYS AT LAW

MARSA S BECK
CAROL M BISHOP
GREGORY E BLACKWELL
RHONDA B BOGGESS
CHRISTOPHER P BOYD
BRIAN E CURRIE
STEPHEN E DAY
NICHOLAS J ELDER
DAVID H GAGNON
REED W GRIMM
BRADLEY R JOHNSON
BONNIE J MURDOCH
JOHN D OSBATHORPE
TARA N POOLE
HEATHER E SOSNOWSKI
JOHN C TAYLOR, JR

BANK OF AMERICA TOWER
50 NORTH LAURA STREET, SUITE 2500
JACKSONVILLE, FLORIDA 32202
TELEPHONE (904) 356-0700
FACSIMILE (904) 356-3224
WWW.TDCLAW.COM

AMELIA ISLAND OFFICE
25 SOUTH FIFTH STREET
FERNANDINA BEACH, FLORIDA 32034
TELEPHONE (904) 261-5858
FACSIMILE (904) 261-4898

June 19, 2007

<u>Via Email (daniel.deitch@nfiindustries.com)</u>

Daniel C. Deitch, Esquire
Vice President, Associate General Counsel
NFI Industries
1515 Burnt Mill Road
Cherry Hill, NJ 08003

|       |        |                                                                                    |
|-------|--------|------------------------------------------------------------------------------------|
| Re:   | Case:  | Peter Adams v. Smurfit-Stone Container Corporation, n/k/a Smurfit-Stone Container Enterprises, Inc. |
|       | Event: | Defense tender per Contractor's Agreement and Certificate of Liability Insurance   |

Dear Daniel:

Following up on our pleasant conversation, our firm represents Smurfit-Stone Container Enterprises ("Smurfit") in connection with the above-captioned matter. Please accept this letter as our respectful request and demand that NFI Industries ("NFI") defend the case and hold Smurfit harmless as a successor to Core Carriers ("Core") regarding an incident which took place at Smurfit's Seminole Mill here in Jacksonville on December 10, 2002. By way of summary, Smurfit believes NFI is obligated to take over and defend this case based on the Contractor's Agreement dated December 6, 2002 as well as the Certificate of Liability Insurance dated February 6, 2003 but which deals with a policy period of October 1, 2002 through October 1, 2003. I attach for your quick review both of these documents as well as the Complaint filed by the Plaintiff.

From a factual standpoint, Peter Adams ("Adams" or "Plaintiff") was employed by Core Carriers at approximately 4:00 a.m. on December 10, 2002 while working as a "Spotter" at the Smurfit facility. (The Complaint indicates the accident took place on December 2, 2002, but we were able to verify the Plaintiff's deposition on May 29, 2007 that December 10, 2002 is the actual date-of-accident.) Adams was crawling out of the back of an empty trailer in Smurfit's Wood Yard when he lost his balance and fell to the ground. Adams says he struck his buttocks on cement/asphalt. He ultimately

## TAYLOR, DAY, CURRIE, BOYD & JOHNSON

Daniel C. Deitch, Esquire
June 19, 2007
Page 2

had a lumbar fusion, he has not worked since the day after the accident. He is now on Social Security disability.

As we discussed, the case is just beginning. In fact, the Plaintiff's deposition is still "open" as we have additional questions to ask him when we re-convene. That date has not yet been set, but please let us know if you would like to take part in same.

As to the specifics of the Contractor's Agreement, paragraph 5 deals with Core's indemnification obligations. Paragraph 6 concerns Core's obligation to secure insurance coverage which it seems to have done. The Certificate appears to show First Specialty Insurance Corporation as the carrier for the General Liability coverage which has a $1,000,000 limit per occurrence. Please place the appropriate carrier on notice of this claim as soon as possible. If we can be of assistance in this regard, please let me know immediately.

Thank you so much for your consideration and feedback concerning this incident and the subsequent litigation. We look forward to formally turning over the defense to NFI and/or its carrier in the very near future.

Sincerely,

Bradley R. Johnson

BRJ/jeb

Enclosure

cc:    Bonnie J. Murdoch, Esquire
       David M. Gagnon, Esquire

Doc I D #. 386363

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

FIRST SPECIALTY INSURANCE                )
CORPORATION,                             )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )
                                         )
SMURFIT-STONE CONTAINER                  )
ENTERPRISES f/k/a SMURFIT-STONE          )
CONTAINER CORPORATION,                   )
                                         )
                    Defendant.           )

## COMPLAINT FOR DECLARATORY JUDGMENT

# EXHIBIT D

## First Specialty Insurance Corporation

Administrative Office
5200 METCALF
OVERLAND PARK, KS 66201
(913) 676-5050

Domiciliary Office
237 EAST HIGH STREET
JEFFERSON CITY, MO 65102

## COMMON POLICY DECLARATIONS

**POLICY NO:**    IRG49032
**RENEWAL OF:**  New
**NAMED INSURED AND MAILING ADDRESS:**
Vineland Construction, Inc
113 Enterprise Drive
Hebron, OH 43025

**PRODUCER NO.:**   131890
**PRODUCER NAME & ADDRESS:**
Health Insurance Brokers, Inc
300 South Wacker Drive, Suite 1080
Chicago, IL 60606

**POLICY PERIOD: FROM**      October 1, 2002      **TO**      October 1, 2003 AT
12:01 A.M. Standard Time at your mailing address shown above

**FORM OF BUSINESS:** ☐ Individual     ☐ Partnership     ☐ Joint Venture     ☒ Corporation
☐ Organization (Other than Partnership)

**BUSINESS DESCRIPTION:**  Lessors Risk Buildings

SIC CODE  6029

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | Premium |
|---|---|
| Commercial Auto Coverage Part | $N/A |
| Commercial Crime Coverage Part | $N/A |
| Commercial Garage Coverage Part | $N/A |
| Commercial General Liability Coverage Part | $135,000 |
| Commercial Inland Marine Coverage Part | $N/A |
| Commercial Property Coverage Part | $N/A |
| Other: | $N/A |
| Other: | $N/A |
| TOTAL PREMIUM (Includes $          Tax and/or Surcharge) | $135,000 |

Premium Shown Is Payable:  ☒ At Inception    ☐ See Premium Payment Schedule

Audit Period:  Annual (*Unless otherwise Stated*) ☐ Monthly ☐ Quarterly ☐ Semi-Annual

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS:**
**See Schedule of Policy Forms and Endorsements**

**THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, COVERAGE
PART COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF,
COMPLETE THE ABOVE NUMBERED POLICY.**

**COUNTERSIGNED** December 12, 2002                **BY**  _____
                  (Date)                                    (Authorized Signature)

IN WITNESS WHEREOF, the First Specialty Insurance Corporation has caused this policy to be signed by its
President and Secretary, but the same shall not be binding except in conjunction with a completed policy Declarations
issued to the named insured to form a part of this policy.

President

Secretary

FSIC-3000(01/02)-DEC

# First Specialty Insurance Corporation

5200 Metcalf • P.O. Box 2938 • Overland Park, KS 66201-1338
(913) 676-5050 • Facsimile (913) 676-5875

## COMMERCIALGENERALLIABILITYCOVERAGEPART
## DECLARATIONS

**POLICY NO:**      IRG49032

**NAMED INSURED:**   Vineland Construction, Inc

**LIMITS OF INSURANCE:**

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | $2,000,000 |
| PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| FIRE DAMAGE LIMIT Any One Fire | $50,000 |
| MEDICAL EXPENSE LIMIT - Any One Person | $Excluded |

**DEDUCTIBLE** ☐ **SELF INSURED RETENTION** ☒ applicable to: ☒ **Defense and Loss (DL)** ☐ **Loss Only (FD)**
$50,000  per claim ☐   per occurrence ☒        $____ annual aggregate

**RETROACTIVE DATE** (CG 00 02 only)
COVERAGE A and B of this insurance do not apply to "bodily injury" or "property damage," "personal injury" or
"advertising injury" which occurred before the Retroactive Date, if any, shown below.

Retroactive Date: <u>None</u>
            (Enter Date or "None" if no Retroactive Date applies.)

Extended Reporting Period Charge:  <u>N/A</u> %    For <u>N/A</u> year period.

**BUSINESS DESCRIPTION OF ALL PREMISES YOU OWN, RENT, OR OCCUPY:**
Location 1-Address: <u>All Locations</u>

| Classification | Code No. | Premium Basis | Estimated Exposure | Rate | Advance Premium |
|---|---|---|---|---|---|
| Lessors Risk Buildings | 61213 | Square Footage | 13,057,318 sq. ft. | $10.34 per $1,000 of Square footage | $135,000 |

Premium Subject to Audit?      ☒ Yes  ☐ No     Based on a Rate of: $<u>10.34</u> per $<u>1,000</u> of <u>square footage</u>
Frequency of Audit:     ☒ Annual  ☐ Quarterly  ☐ Monthly
Minimum Premium    $135,000           Minimum Earned Premium    25%

**FORMS AND ENDORSEMENTS APPLICABLE:** See schedule of Policy forms and Endorsements

THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE
NAMED INSURED AND THE POLICY PERIOD.

FSIC-3301 Declarations (08/01)

# *First Specialty Insurance Corporation*

### Notice to Policyholder

This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.

## *First Specialty Insurance Corporation*

## CLAIMS REPORTING PROCEDURES

In event of a claim or potential claim, please immediately complete and forward a First Notice of Loss on an ACORD Loss Form, along with a copy of the Policy Declarations Page and any policy-specific endorsements by mail to the following address:

**FSIC NEW CLAIMS**
**WARD NORTH AMERICA**
**4210 SHAWNEE MISSION PARKWAY, SUITE 200A**
**FAIRWAY, KANSAS 66205-2513**
**Attn: Malcolm Clark**

Or send the First Notice of Loss on an ACORD Loss Form, along with a copy of the Policy Declarations Page and any policy-specific endorsements by fax to:

**FSIC NEW CLAIMS**
**WARD NORTH AMERICA**
**FAIRWAY, KANSAS**
**FAX NUMBER: 800/439-2398**

In the event of a serious claim that requires immediate attention, or a question related to your claim submission, you can speak to someone on the First Specialty Claim Service Team by calling toll-free **800/827-9050**.

FSIC (04/02)

**Schedule of Policy Forms and Endorsements**
Form(s) and Endorsement(s) made a part of this policy at time of issue

Policy No.: **IRG 49032**

| Policy Form Description | Form Number | Edition Date |
|---|---|---|
| Common Policy Declarations | FSIC 3000 | 01-02 |
| Commercial General Liability Coverage Part Declarations | FSIC 3301 | 08-01 |
| Warning Language | | |
| Claims Reporting Procedures | | |
| Schedule of Policy Forms and Endorsements | | |
| Commercial General Liability Coverage Form-Occurrence | CG 00 01 | 07-98 |
| Service of Suit Clause Endorsement | FSIC 3371 | 03-98 |
| Common Policy Conditions | IL 00 17 | 11-98 |
| Amendment of Insuring Agreement-CGL | CG 00 57 | 09-99 |
| Amendment of Section IV Conditions | FSIC 3378 | 02-02 |
| Asbestos Exclusion | FSIC 3359 | 03-98 |
| Employment Related Practices Exclusion-CGL | FSIC 3363 | 03-98 |
| Nuclear Energy Liability Exclusion Endorsement | IL 00 21 | 04-98 |
| Total Pollution Exclusion Endorsement | FSIC 3391 | 05-98 |
| War or Terrorism Exclusion | SP 1 775 | 12-01 |
| Additional Insured Automatic Status When Required In Agreement | CG 20 33 | 07-98 |
| Amendment of Cancellation Condition | FSIC 3355 | 10-98 |
| Broad Named Insured | SP 000 644 | 12-99 |
| Named Insured | FSIC 3367 | 03-98 |
| Cross Suits Exclusion | FSIC 3392 | 05-98 |
| Scheduled Premises Endorsement | CG 21 44 | 07-98 |
| Self Insured Retention Endorsement | FSIC 3388 | 05-98 |
| Waiver of Subrogation Endorsement | CG 24 04 | |
| StopGap | FSIC 3387 | |
| Exclusion Known and Continuing Losses | FSIC 33517 | 11-98 |
| Total Lead Exclusion | FSIC 3389 | 05-98 |
| Employee Benefits Liability Coverage – Claims Made | CG 04 35 | 02-02 |

SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98    □

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    ☐

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

   (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (4) Arising out of a criminal act committed by or at the direction of any insured;

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

   (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS–COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98    □

(2) Provides us with written authorization to:

   (a) Obtain records and other information related to the "suit"; and

   (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

   (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

     you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

 Copyright, Insurance Services Office, Inc., 1997 □

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    ☐

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

   **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

   **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contractor agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, water-craft or "auto" to the place where it is finally de-livered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached ma-chinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, main-tained primarily to provide mobility to perma-nently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently at-tached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building clean-ing, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the follow-ing types of permanently attached equipment are not "mobile equipment" but will be consid-ered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building clean-ing, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including con-tinuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person oc-cupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slan-ders or libels a person or organization or dis-parages a person's or organization's goods, products or services;

e. Oral or written publication of material that vio-lates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property dam-age" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical pos-session; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the fol-lowing times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your con-tract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

       Copyright, Insurance Services Office, Inc.,  1997       CG 00 01 07 98    ☐

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

# *First Specialty Insurance Corporation*

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

Service of Suit Clause Endorsement

It is agreed that service or process in any lawsuit instituted against the Company may be made upon:

General Counsel
First Specialty Insurance Corporation
5200 Metcalf
Overland Park, Kansas 66201

and that in any suit instituted against the above party upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above party is authorized and directed to accept service of process on behalf of the Company in any suit and/or upon the request of the insured to give a written undertaking to the insured that he will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute or any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above as the party to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

COMMERCIAL GENERAL LIABILITY
CG 00 57 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph 1. **Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Copyright, Insurance Services Office, Inc., 1998

# *First Specialty Insurance Corporation*

**ENDORSEMENT**

**This Endorsement Changes the Policy - Please Read it Carefully**

**AMENDMENT OF CONDITIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS FORM

All Coverage Forms attached to this policy are amended to include the following:

**I.    AMENDMENT OF CONDITIONS**

    **A.    Section IV, Conditions, Paragraph 4, Other Insurance, and Section IV, Products/Completed Operations Liability Conditions (as applicable) are amended by the addition of the following:**

    Excess Provision – Vendors

    The coverage afforded the insured under this Coverage Form will be excess over any valid and collectible insurance available to you as an additional insured under a policy issued to a manufacturer or distributor for products manufactured, sold, handled, or distributed by you.

    **B.    Section IV, Conditions, Paragraph 5, Premium Audit, and Section IV, Products/Completed Operations Liability Conditions (as applicable) are deleted and the following is substituted therefor:**

       5.    Premium Audit, Minimum Premium - Minimum Retained Premium

          a.    We will compute all premiums for this Coverage Part in accordance with the terms and conditions of this policy.

          b.    Premium shown in this policy as Advance Premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable upon notice to the first Named Insured. If the sum of the Advance and audit premiums paid for the policy term is greater than the earned premium, the return premium shall be subject to all the provisions of this condition.

          c.    In no event will the final premium retained by us be less than the minimum premium shown in the Declarations of this policy. If no other premium is designated specifically as a minimum premium, the Advance Premium shown in the Declarations is the minimum. Such minimum premium is subject to the short rate or pro rate adjustment according to policy provisions in case of cancellation of the policy.

          d.    This policy is also subject to a minimum retained premium of 25% of the Advance Premium shown in the Declarations of this policy. Such minimum retained premium is not subject to pro rate or short rate adjustment in the event of cancellation by you and we shall retain no less than the minimum retained premium regardless of the policy term. Cancellation of the policy for non-payment of premium shall be deemed a request by you for cancellation of this policy thereby invoking the minimum retained premium, unless the pro rate calculation earns for us more than the minimum retained premium.

Endorsement Serial No. FSIC-3378 (02/02)

      e.    The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**C.    Section IV, Conditions, Paragraph 9, When We Do Not Renew, is deleted in its entirety.**

## II.    ADDITIONAL CONDITIONS

The following Conditions are added to Section IV, Conditions, and Section IV, Products/Completed Operations Liability Conditions (as applicable) of the Coverage Form attached to this policy:

10.    Premium Financing/Cancellation of Financed Policy

      a.    When we receive notification that the premium for this policy has been advanced by a premium finance company, we will acknowledge receipt of the premium finance agreement to the finance company on our form, when requested, but we will not amend or extend this policy.

      b.    When we otherwise become aware that you financed all or part of this policy's premium, regardless of whether or not we receive a notice of premium financing, we will not be bound, as respects coverage we provide, by the terms of your finance agreement. This policy alone governs coverage.

      c.    When you sign a premium finance agreement, by the terms of the agreement, you may be giving the premium finance company the right, under certain conditions, to cancel this policy on your behalf. When we receive notice of cancellation from the finance company, we will recognize their request for termination of this insurance as though it was your request and we will pay any return premium due as directed by the premium finance company. In the absence of statutes to the contrary, non-payment to a premium finance company shall be considered the same as if the first Named Insured cancelled the policy. The return premium will be calculated on a pro rata basis. The premium finance company will usually require that payment of any return premium be made directly to them and we will honor that request unless applicable law requires otherwise. Any requested termination date set by the premium finance company that conflicts with other policy provisions or the operation of law, is subject to both the policy provisions and applicable law. You must resolve any resulting premium difference directly with the finance company.

      d.    The twenty-five percent (25%) minimum retained premium described in Section IV, Paragraph 5., Item d. of your policy as set forth above may not be financed as it is not refundable.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
Authorized Representative

# First Specialty Insurance Corporation

ENDORSEMENT

**This Endorsement Changes the Policy - Please Read it Carefully**

Asbestos Exclusion

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

A) "Bodily Injury" or "property damage" in whole or in part, either directly or indirectly arising out of, based upon or attributable to any of the following:

　　1.　Asbestos or any asbestos related injury or damage; or

　　2.　any alleged act, error, omission or duty involving asbestos, its use, exposure, presence, existence, detention, removal, elimination or avoidance; or

　　3.　the use, exposure, presence, existence, detention, removal, elimination or avoidance of asbestos in any environment, building or structure; and

B) The investigation, settlement or defense of any claim, "suit" or proceeding against the insured alleging any actual or threatened injury or damage which arises out of or would not have occurred but for asbestos "Bodily Injury" or "Property Damage", as described above.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

　　　　　　　　　　　　　　　　　　　　————————————————————————
　　　　　　　　　　　　　　　　　　　　**Authorized Representative**

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1991

Endorsement Serial No. FSIC-3359(03/98)

# *First Specialty Insurance Corporation*

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

Employment-Related Practices Exclusion

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following exclusion is added to paragraph 2., Exclusions of COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I-Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1)  A person arising out of any:

    (a)  Refusal to employ that person;

    (b)  Termination of that person's employment; or

    (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2)  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Page 1 of 2

## *First Specialty Insurance Corporation*

B.   The following exclusion is added to paragraph 2., Exclusions of COVERAGE B-PERSONAL AND ADVERTISING INJURY LIABILITY (Section I-Coverages):

This insurance does not apply to:

"Personal injury" to:

(1)   A person arising out of any:

      (a)   Refusal to employ that person;

      (b)   Termination of that person's employment; or

      (c)   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2)   The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

                                                            **Authorized Representative**

Endorsement Serial No. FSIC-3363(03/98)

INTERLINE
IL 00 21 04 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

        Copyright, Insurance Services Office, Inc., 1997          □

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc.,  1997
IL 00 21 04 98     □

# *First Specialty Insurance Corporation*

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

### TOTAL POLLUTION EXCLUSION ENDORSEMENT EXCEPT FOR HOSTILE FIRE - "PRODUCTS-COMPLETED OPERATIONS HAZARD"

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

Exclusion f., under Paragraph 2., Exclusions of COVERAGE A., BODILY INJURY AND PROPERTY DAMAGE LIABILITY, (Section I - Coverages) is hereby deleted. The following exclusion is hereby added to COVERAGE A., BODILY INJURY AND PROPERTY DAMAGE LIABILITY under Paragraph 2., Exclusions and to COVERAGE B., PERSONAL AND ADVERTISING INJURY LIABILITY under Paragraph 2., Exclusions.

This insurance does not apply to:

(1)    "Bodily injury," "property damage," "personal injury," or "advertising injury" caused by or arising out of, in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time.

(2)    Any loss, cost, or expense arising out of any:

    (a)    request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b)    claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

**Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste. Waste includes material to be recycled, reconditioned, or reclaimed.

This exclusion does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of heat, smoke, or fumes from a hostile fire.

(Page 1 of 2)

Endorsement Serial No. FSIC-3391 (05/98)

Includes Copyrighted Material of Insurance Services Office, Inc.
Copyright Insurance Services Office, Inc. 1994

As used in this exclusion, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

This exclusion does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of the "Products-Completed Operations Hazard."

(Page 2 of 2)

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

Endorsement Serial No. FSIC-3391 (05/98)

Includes Copyrighted Material of Insurance Services Office, Inc.
Copyright Insurance Services Office, Inc. 1994

## First Specialty Insurance Corporation

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WAR OR TERRORISM EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Exclusion i. under Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

2.  **Exclusions**

This insurance does not apply to:

i.  **War or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

(3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4)  "Terrorism," including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

B.  The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability**:

2.  **Exclusions**

This insurance does not apply to:

**War or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism," including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

C.    Exclusion h. under Paragraph 2., **Exclusions of Section I – Coverage C – Medical Payments** does not apply.

D.    The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1.    That involve the following or preparation for the following:

   a.    Use or threat of force or violence;

   b.    Commission or threat of a dangerous act; or

   c.    Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.    When one or both of the following applies:

   a.    The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b.    It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives or to express (or express opposition to) a philosophy or ideology.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
Authorized Representative

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

**B.** With respect to the insurance afforded these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

     Copyright, Insurance Services Office, Inc., 1997

# *First Specialty Insurance Corporation*

ENDORSEMENT

**This Endorsement Changes the Policy - Please Read It Carefully**

Amendment of Cancellation Condition

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

Any policy condition or agreement relating to CANCELLATION (Paragraph A of the COMMON POLICY CONDITIONS- IL 00 17, and wherever found elsewhere in the policy) is deleted in its entirety and the following applies instead:

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 60 (Sixty)    days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

                                                              **Authorized Representative**

Endorsement Serial No. FSIC-3355(10/98)
Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1994

# *First Specialty Insurance Corporation*

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

### BROAD NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

It is agreed and understood that **Section II** of the Commercial General Liability Coverage Form (CG 00 01) **WHO IS AN INSURED** Item 4, is amended to read:

Any subsidiary companies, corporations, enterprises, firms or other organizations of which a Named Insured maintains ownership of 51% or greater and management control. Any organization you newly acquire or form other than a partnership, joint venture or limited liability company and over which you maintain ownership or majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization. However, no person or organization is an insured with respect to the conduct of any current or past partnerships, joint ventures or limited liability companies unless you were a partner or member. This coverage is excess over any liability insurance purchased specifically to insure the partnership or joint venture, whether primary, excess contingent or on any other basis.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
Authorized Representative

Endorsement Serial No. SP 000 644 1299

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1994

# *First Specialty Insurance Corporation*

ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY - Please Read It Carefully

Named Insured

In consideration of the premium charged, it is agreed that the **named insured** in Item #1 of the policy Declarations is amended to read as follows, but, for the purpose of giving and receiving notices and the payment or the return of premium, the first **named insured** shall be deemed the only **named insured** and shall act as the agent for any and all other **named insureds**:

Vineland Construction Co.
NFI Industries, Inc.
National Freight, Inc
National Distribution Centers, LP
Interactive Logistics, Inc.
NFI Capital Corp.
NFI, Inc.
National Distribution Cetners, LP
B and S Partnership
Four B's Partnership
National Distribution Centers of Delaware, Inc.
NDC Systems, LP
226 Landis Avenue Associates, LLC
Redwood Acres, Inc.
Burnt Mill Group, LLC
Larkins Management Corp.
Larkins Associates, LP
Hammonton Square, Inc.
Hammonton Square Associates, LP
Garden State Pavilions, LLC
Annster, Inc.
Ben-Ann, Inc.

Landis Leasing, Inc.
Three B's Leasing, LLC
Waxahachie Associates, LLC
National Freight Truck Lines, Inc.
NFI Canada, Inc.
NFI Contract Manufacturing, LLC
ABK Real Estate, LLC
National Freight, Inc. dba Core Carriers

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

Endorsement Serial No. FSIC-3367(03/98)

# First Specialty Insurance Corporation

## ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

### CROSS SUITS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

All Coverage Forms attached to this policy are amended to include the following exclusions:

Cross Suits Liability Exclusion

This policy does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising from claims or "suits" brought by:

a.   One insured against another insured;

b.   Any parent company or parent corporation that owns any interest in any insured, or any subsidiary company or subsidiary corporation which owns any interest in any insured;

c.   Any other company or corporation of which any interest is owned by any of the entities described in a. or b. above;

d.   Any division or department of any of the entities described in a., b., or c. above;

e.   Any officer, director, or employee of any of the entities described in a., b., c., or d. above.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Premises:
1. 3905 River Rd, Pennsauken, NJ
2. 46 North West Ave, Vineland, NJ
3. 235 Second St, Vineland, NJ
4. 4th & Pear Sts, Vineland, NJ
5. 44 North West Ave, Vineland, NJ
6. 57 West Park Ave, Vineland, NJ
7. 3100 C N Mill Rd, Vineland, NJ
8. 270 Heller Park Ct, Dayton, NJ
9. 240 Heller Park Ct, Dayton, NJ
10. 84 Broadway, Newburgh, NY
11. 200 Sawmill Pond Rd, Edison, NJ 08817
12. 115 Pennsylvania Ave, Framingham, MA
13. 1515 Burnt Mill Rd, Cherry Hill, NJ
14. 401 South 3rd St, Millville, NJ 08332
15. 400 Richards Run, Burlington, NJ 08016
16. 115 Silvermine Road, Brookfield, CT 06804
17. 250 Johnson Lake Rd, Calhoun, GA 30701
18. 2000 Landstreet, Orlando, FL
19. 4601 Bulls Bay Highway, Jacksonville, FL
20. 1103 N 22nd Street, Tampa, FL
21. 901 W Landstreet Rd, Orlando, FL
22. 5806 North 53rd, Tampa, FL
23. 4701 East 7th, Tampa, FL
24. 5300 Adamo Dr, Tampa, FL
25. 1061-A Caroline Pines Rd, Blythewood, SC
26. 2500-B Sullivan Rd, College Park, GA 30337
27. 501-B Hazel Avenue, Nashville, GA 31639
28. 201 Bell St, Nashville, GA 31639
29. 740 W New Circle Rd, Lexington, KY 40550

Continued on Following Page

     Copyright, Insurance Services Office, Inc., 1997     **Page 1 of 2**     □

Premises: 30. 3039 Cornwallis Rd, Bldg 3, Raleigh, NC 27709
31. 2150 Roswell Dr, Pittsburgh, PA 15202
32. 600 Eagle Dr, Bensonville, IL
33. 23371 Aurora Rd, Bedford Hts, OH
34. 650 Manor Park Dr, Columbus, OH
35. 438 McCormick Blvd, Columbus, OH
36. 446 McCormick Blvd, Columbus, OH
37. 1365 Mitchell Blvd, Schaumburg, IL 60193
38. 3085 Reld Rd, Grand Blanc, MI 48430
39. 1884 Williams Road, Columbus, OH 43207
40. 201 Butcher Rd, Waxahachie, TX
41. 830 SW 14th St, Grand Prairie, TX
42. 1125 Joel East Rd, Ft Worth, TX
43. 2750 Oakland, Garland, TX
44. 1000 Goodrich Blvd, Miami, OK
45. 600 General Parkway, Waco, TX 76704
46. 8800 S. Freeway, Ft Worth, TX 76140
47. 1755 Trans Central Drive, Houston, TX 77032
48. 1990 Pomona-Rincon Rd, Corona, CA
49. 1991 South Cucamonga Ave, Ontario, CA
50. 925 Richmond St, Los Angeles, CA
51. 2900 Jurupa, Ontario, CA 91761
52. 2900 MacArthur Dr, Tracy, CA 95376
53. 5450 East Franois St, Ontario, CA 91761
54. 2817 E Cedar St, Ontario, CA 91761
55. 8865 Utica Ave, Rancho Cucamonga, CA
56. 14051 Rosecrans Ave, La Miranda, CA 90638

Project:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997        CG 21 44 07 98        □

# *First Specialty Insurance Corporation*

**ENDORSEMENT**

**This Endorsement Changes the Policy - Please Read it Carefully**

**SELF-INSURED RETENTION ENDORSEMENT**
**(Defense Costs Included In Retention)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

| Self-Insured Retention Schedule |
|:---:|
| $_____  each claim |
| $50,000  each occurrence |
| $_____  aggregate |
| $_____  maintenance |
| (Amounts shown for applicable bases of retention.) |

The Limits of Insurance of this policy shown in the Declarations shall be excess of and not reduced by the Insured's payments of damages or defense costs under the Self-Insured Retention(s).

If the Schedule above shows the Self-Insured Retention applies to each "claim", the Insured shall be responsible for and pay up to that retention all damages arising from each "claim" against the Insured to which this policy applies.

If the Schedule above shows the Self-Insured Retention applies to each "occurrence," the Insured shall be responsible for and pay up to that retention all damages for which the Insured is liable in any "claim" or "suit" arising from one "occurrence," regardless of the number of persons or companies making such "claim(s)" or properties sustaining such damages.

If the Schedule above shows the Self-Insured Retention applies in the aggregate, the Insured shall be responsible for and pay all damages, either on an each "claim" or each "occurrence" basis as shown in the Schedule above, up to the aggregate Self-Insured Retention. Upon satisfaction by the Insured of the aggregate Self-Insured Retention, we shall have the right, subject to the maintenance Self-Insured Retention if shown in the Schedule above, to assume charge of the settlement or defense of any "claim" or "suit" against the Insured not yet settled, whether or not reported to us.

If the Schedule above shows a maintenance Self-Insured Retention applies after the aggregate Self-Insured Retention has been satisfied by the Insured, the Insured shall be responsible for and pay all damages, either on an each "claim" or each "occurrence" basis, as shown in the Schedule above, up to the maintenance Self-Insured Retention for each "claim" or each "occurrence."

"Defense costs" are included within the Self-Insured Retention(s).

Page 1 of 4

Endorsement Serial No. FSIC-3388 (05/98)

We will pay such "defense costs" only upon the Insured's satisfaction of the applicable retention by payment of damages and/or "defense costs," and otherwise in accordance with and subject to the terms, conditions, and limits of the policy.

"Defense costs," as used in this endorsement, means:

1.    "Claims" expense, including outside attorneys fees, incurred by or on behalf of the Insured in the handling and defense of "claims" or "suits" against the Insured arising out of an "occurrence" to which this policy applies, but excluding salaries or wages of the Insured's officers or employees or the staff attorney or the Insured's office expenses.

2.    Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the "bodily injury" liability coverage applies. We do not have to furnish these bonds.

3.    The cost of bonds to release attachments, but only for the bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4.    All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the "claim" or "suit," including actual loss of earnings up to $100 a day because of time off work.

5.    All costs taxed against the Insured in the "suit."

We shall have the right and opportunity to associate, at our own expense, with the Insured in the defense, appeal, settlement, or control of any "claim" or "suit" to which this policy applies seeking damages in excess of the Self-Insured Retention. In such event, we and the Insured shall cooperate fully.

Should any "claim" or "suit" to which this policy applies appears likely to exceed the Self-Insured Retention, no "defense costs" shall be incurred on behalf of us without our prior consent.

"Claim" means, whenever used in this policy, a demand received by the Insured for the money or services, including the service of "suit" or institution of arbitration proceedings against the Insured.

A.    **COVERAGE FORM SECTION IV. CONDITIONS 2.** "Duties in the Event of Occurrence, Offense, Claim, or Suit" is replaced by the following:

2.    Duties in the Event of "Occurrence," "Claim," or "Suit"

a.    You must see to it that the Claims Service Company is notified promptly of an "occurrence" which may result in a "claim." Notice should include:

(1)    How, when, and where the "occurrence" took place; and

(2)    The names and addresses of any injured persons and witnesses.

b.    You must see to it that we are notified promptly of an "occurrence" which may result in a "claim," that is likely to result this policy or which involves fatalities, spinal injuries, head injuries, loss of limb, and other serious "bodily injury," irrespective of liability or reserve. Notice should include:

Endorsement Serial No. FSIC-3388 (05/98)

      (1)     How, when and where the "occurrence" took place; and

      (2)     The names and addresses of any injured persons and witnesses. Failure to notify us of any act or omission which, at the time of its happening, did not appear to give rise to a "claim" hereunder, shall not prejudice such "claim."

You and any other involved Insured must also:

      (1)     Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

      (2)     Authorize us to obtain records and other information;

      (3)     Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

      (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

c.     If a "claim" is made or "suit" is brought against any Insured involving this policy, you must see to it that we receive prompt written notice of the "claim" or "suit."

**B.    SPECIAL CONDITIONS**

1.    Pursuant to the terms and conditions of this Self-Insured Retention Endorsement, you shall retain:

In house Legal Council (hereinafter ATTORNEY) to administer "claims" handling within the Self-Insured Retention until the conclusion of all reported incidents or "claims." The expiration or termination of this policy with us shall not absolve you of this obligation.

2.    In the event of a cancellation, expiration or revision of the contract between you and the ATTORNEY, you will notify us within ten (10) days from the date of such cancellation, expiration, or revision of the contract. If you fail to contract with a substitute ATTORNEY acceptable to us or are unable to pay for covered damages, "defense costs," or supplementary payments within the Self-Insured Retention, you acknowledge that we shall have the right, but not the obligation, to contract directly with an ATTORNEY to administer "claims" handling within the Self-Insured Retention should we elect to exercise our rights under the circumstances set forth above.

Endorsement Serial No. FSIC-3388 (05/98)

3.    We shall have the right, but not the duty, to assume charge of the defense and/or settlement of any "claim" or "suit" brought against the Insured and, upon written request from us, you shall tender such portion of the Self-Insured Retention as we may deem necessary to complete the settlement of such "claim" or "suit" and to pay for "defense costs."

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

Endorsement Serial No. FSIC-3388 (05/98)

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:

ANY PERSON OR ORGANIZATION WHEN YOU AND SUCH PERSON OR ORGANIZATION HAVE AGREED IN WRITING IN A CONTRACT OR AGREEMENT THAT YOU WILL WAIVE ANY RIGHT OF RECOVERY AGAINST SUCH PERSON OR ORGANIZATION.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

# *First Specialty Insurance Corporation*

### ENDORSEMENT

#### This Endorsement Changes the Policy - Please Read it Carefully

#### STOP GAP EMPLOYERS LIABILITY ENDORSEMENT

The policy shall be amended to include the following:

## SECTION I - COVERAGES

1.  Insuring Agreement.

    a.  Subject to the Deductible shown on the deductible endorsement - FSIC 3388, we will pay those sums that you become legally obligated to pay as damages because of "bodily injury" of any "employee" of yours who sustains an injury which arises out of and in the course of employment, provided such "employee" is reported and declared under a workers compensation fund of the state(s) of Ohio. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A and B. This insurance applies only to "bodily injury" which occurs during the policy period. The "bodily injury" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages. But:

        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III);

        (2) We may investigate and settle any claim or "suit" at our discretion; and

        (3) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A, B, Medical Expenses under Coverage C or under this endorsement.

    b.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2.  Exclusions.

    This insurance does not apply to:

    a.  Any liability assumed by you under any contract or agreement;

    b.  "Bodily injury" sustained by a master or member of the crew of any vessel or by any "employee" of yours in the course of employment subject to the Federal Employer's Liability Act (45 USC § 51-60) or any amendment to those laws;

    c.  "Bodily injury" suffered or caused by any person knowingly employed by you in violation of any law as to age, or under the age of 14 years regardless of any such law;

(Page 1 of 4)

d.  Punitive or exemplary damages arising out of or in connection with "bodily injury" to an employee who was employed in violation of law;

e.  "Bodily injury" suffered by any "employee" whose remuneration has not been included in the total remuneration upon which premium for this endorsement is based;

f.  "Bodily injury" arising out of or in connection with aircraft operation, including but not limited to the performance of any duty in connection with aircraft while in flight;

g.  Any claim or "suit" for "bodily injury" with respect to which you are deprived of any defense or defenses, or which is otherwise subject to any monetary penalty or fine because of default in premium payment under or failure to comply with the provisions of any workers compensation law;

h.  Any premium, assessment, penalty, fine, benefits or other obligation imposed by any workers compensation, occupational disease, unemployment compensation or disability benefits law or under any similar law;

i.  Any injury sustained because of any act committed intentionally or aggravated by you or at your direction and, if you are designated in the Declarations as a partnership or an organization other than a partnership or joint venture, by any executive officer, director, stockholder or partner thereof;

Exclusion i. shall not exclude coverage for your legal liability other than benefits or compensation provided for under any workers compensation act, resulting from the deliberate intentional act of an "employee" or agent (other than an executive officer, director, stockholder or partner) that produce injury or death to another "employee" when such act is committed within the scope of employment.

j.  "Bodily injury" occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to "bodily injury" to a citizen or to a resident of the United States of America or Canada who is temporarily outside these countries;

k.  Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against, or termination of any employee, or any personnel practices, policies, acts, or omissions;

l.  "Bodily injury" to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC §§ 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC §§ 8171-8173), the Outer Continental Shelf Lands Act (43 USC §§ 1331-1356), the Defense Base Act (42 USC §§ 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC §§ 901-942), any other federal workers or workmens' compensation law or other federal occupational disease laws, or any amendments to these laws;

m.  Fines or penalties imposed for violation of federal or state law;

n.  Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC §§ 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issues thereunder, and any amendments to those laws.

SUPPLEMENTARY PAYMENTS - COVERAGES A and B (SECTION I) is extended to apply to coverage provided by this endorsement. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENT - COVERAGES A, and B.

## SECTION II - WHO IS AN INSURED

You are an Insured if you are an employer specifically named in the Declarations of this policy. If that employer is a partnership, joint venture or a limited liability company and if you are one of its partners or members, you are an Insured, but only in your capacity as an employee of the entity.

## SECTION III - LIMITS OF INSURANCE

Regardless of the number of (1) Insureds under this policy, (2) persons who sustain "bodily injury," or (3) claims made or "suits" brought on account of "bodily injury," our liability for the coverage provided by this endorsement is limited as follows:

1.   "Bodily Injury" by Accident: $500,000 each accident, is the most we will pay for all damages covered by this endorsement because of "bodily injury" to one or more employees in any accident. A disease is not "bodily injury" by accident unless it results directly from "bodily injury" by accident.

2.   "Bodily Injury" by Disease: $500,000 each employee, is the most we will pay for all damages because of "bodily injury" by disease to any one employee.

   "Bodily Injury" by Disease: $500,000 policy limit, is the most we will pay for all damages covered by this insurance and arising out of "bodily injury" by disease, regardless of the number of employees who sustain "bodily injury" by disease.

   "Bodily injury" by disease does not include disease that results directly from "bodily injury" by accident.

3.   The General Aggregate Limit is the most we will pay for the sum of:

   a.   Medical expenses under Coverage C; and

   b.   Damages under Coverage A, Coverage B, and this endorsement, except damages because of "bodily injury" included in the "products-completed operations" hazard.

Endorsement Serial No. FSIC-3387 (05/98)

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is extended to apply to coverage provided by this endorsement.

**SECTION V - DEFINITIONS** is extended to apply to coverage provided by this endorsement.

The premium for this endorsement shall be computed upon the remuneration earned by such employees as reported under the Workers' Compensation law of the state(s) named herein.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

(Page 4 of 4)

Endorsement Serial No. FSIC-3387 (05/98)

# *First Specialty Insurance Corporation*

**ENDORSEMENT**

**This Endorsement Changes the Policy - Please Read it Carefully**

## EXCLUSION-KNOWN AND CONTINUING LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
BUSINESSOWNERS LIABILITY COVERAGE FORM

1. The following is hereby added to COVERAGE A., BODILY INJURY AND PROPERTY DAMAGE under Paragraph 2., Exclusions and to COVERAGE B., PERSONAL AND ADVERTISING INJURY LIABILITY under Paragraph 2., Exclusions.

   This insurance does not apply to, and we have no duty to defend any claim or "suit" seeking damages because of "bodily injury," " property damage," "advertising injury," or "personal injury" that is or is alleged to be continuing or progressively deteriorating in nature, and which was "manifested" prior to the inception or after the expiration of the policy period;

2. The following definition is hereby added to DEFINTIONS (Section V) :

   "Manifest(ed)" means:

   a. For "bodily injury," when injury, sickness or disease first becomes reasonably capable of medical diagnosis, whether or not the cause of the injury, sickness or disease is known at such time; and

   b. For "property damage," "advertising injury," and "personal injury," when the damage or injury is first discovered, whether or not the cause of such damage or injury is known at such time.

3. In no event will this policy apply to any lawsuit against the Insured if the filing date of the original complaint was prior to the effective date of the policy, whether or not the Insured was a party, and whether or not the Insured was served with process prior to the effective date of the policy.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
Authorized Representative

Endorsement Serial No. FSIC-33517 (11/98)

## First Specialty Insurance Corporation

### MOLD EXCLUSION

#### This Endorsement Changes the Policy - Please Read it Carefully

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> CAUSES OF LOSS – SPECIAL FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CLAIMS-MADE COVERAGE)
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM (CLAIMS-MADE COVERAGE)

The following is added to Section B. Exclusions And Limitations of the Building and Personal Property Coverage Form, and to Section B. Exclusions of the Causes of Loss – Special Form and to Section I. Coverages, Subsection 2. Exclusions of the Commercial General Liability Coverage Form and to Section I. Coverages, Subsection 2. Exclusions of the Products/Completed Operations Liability Coverage Form:

This insurance does not apply to any claim, suit, loss or damages caused directly or indirectly or arising out of:

A.    Fungi, or

B.    Mold, including Stachbotrys chartarum (atra)

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
Authorized Representative

# First Specialty Insurance Corporation

### ENDORSEMENT

### This Endorsement Changes the Policy - Please Read it Carefully

### TOTAL LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

The following exclusion is hereby added to COVERAGE A., BODILY INJURY AND PROPERTY DAMAGE LIABILITY under Paragraph 2., Exclusions and COVERAGE B., PERSONAL AND ADVERTISING INJURY LIABILITY under Paragraph 2., Exclusions.

This insurance does not apply to:

a.  "Bodily injury," "property damage," "personal injury," or "advertising injury" arising, whether in whole or in part, and whether directly or indirectly, out of lead, including, but not limited to, lead contained or incorporated in any material or product;

b.  Any loss, cost, or expense arising out of any:

   (1)  Request, demand, order, writ, injunction, or judgment that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of any kind of lead; or

   (2)  Claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of any kind of lead.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

_____
**Authorized Representative**

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 04 35 02 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $1,000,000 | each employee | $5,000 | each employee | $Included |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | October 1, 1998 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **E.** (Section III – Limits Of Insurance); and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

      **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

      **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

CG 04 35 02 02

© ISO Properties, Inc., 2001

Page 1 of 6          □

**(2)** When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

**2.** Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of **Section II – Who Is An Insured** does not apply.

E. For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

1. **Limits Of Insurance**

   a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

     (1) Insureds;

     (2) "Claims" made or "suits" brought;

     (3) Persons or organizations making "claims" or bringing "suits";

     (4) Acts, errors or omissions; or

     (5) Benefits included in your "employee benefit program".

   b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

   c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

     (1) An act, error or omission; or

     (2) A series of related acts, errors or omissions

   negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. **Deductible**

   a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   c. The terms of this insurance, including those with respect to:

     (1) Our right and duty to defend any "suits" seeking those damages; and

     (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

   apply irrespective of the application of the deductible amount.

   d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**F.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV—Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   **a.** This endorsement is canceled or not renewed; or

   **b.** We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   **a.** The "employee benefit programs" insured;

   **b.** Previous types and amounts of insurance;

   **c.** Limits of insurance available under this endorsement for future payment of damages; and

   **d.** Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

   The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph **E.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **E.1.c.**

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

© ISO Properties, Inc., 2001

## *First Specialty Insurance Corporation*

### GENERAL ENDORSEMENT

**IT IS MUTUALLY UNDERSTOOD AND AGREED, THIS POLICY IS HEREBY AMENDED AS INDICATED BY [X]:**

1. [ ] Annual Premium to $

8. [ ] Expiration Date to

2. [ ] Limit of Liability to $

9. [ ] Retention to $

3. [ ] Named Insured Changed, As Shown Below

10. [ ] Insured's Address Changed, As Shown Below

4. [X] Additional Insured(s) or Subject(s) Of Coverage, Named Below, Added

11. [X] Additional Insured(s) or Subject(s) Of Coverage, Named Below, Deleted

5. [ ] Exclusion(s), Added

12. [ ] Exclusion(s), Deleted

6. [ ] Additional Premium of $

13. [ ]

7. [ ] Return Premium of $

Effective inception and in consideration of the premium charged, CG 21 44 07 98 Limitation of Coverage to Designated Premises or Project Endorsement is deleted in its entirety and replaced with the attached CG 21 44 07 98 Limitation of Coverage to Designated Project or Premises Endorsement.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:    IRG49032

Named Insured:    Vineland construction, Inc.

Endorsement Effective Date:    10/02/2002

**Authorized Representative**

POLICY NUMBER:                                              **COMMERCIAL GENERAL LIABILITY**
                                                           **CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:**   as per on file with the company |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal  and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

## *First Specialty Insurance Corporation*

### GENERAL ENDORSEMENT

**IT IS MUTUALLY UNDERSTOOD AND AGREED, THIS POLICY IS HEREBY AMENDED AS INDICATED BY [X]:**

1. [ ] Annual Premium to $                          8. [ ] Expiration Date to

2. [ ] Limit of Liability to $                        9. [ ] Retention to $

3. [ ] Named Insured Changed,                    10. [ ] Insured's Address Changed,
   As Shown Below                                          As Shown Below

4. [X] Additional Insured(s) or Subject(s)       11. [X] Additional Insured(s) or Subject(s)
   Of Coverage, Named Below, Added                    Of Coverage, Named Below, Deleted

5. [ ] Exclusion(s), Added                          12. [ ] Exclusion(s), Deleted

6. [ ] Additional Premium of $                     13. [ ]

7. [ ] Return Premium of $

Effective inception and in consideration of the premium charged, it is agreed that CG 20 33 (07/98) Additional Insured – Automatic Status When Required in Agreement is deleted in its entirety and replaced with the attached CG 20 10 (03/97) Additional Insured – Lessees or Contractors – Scheduled Endorsement.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:     IRG49032

Named Insured:     Vineland Construction, Inc.

Endorsement Effective Date:     10/01/2002

**Authorized Representative**

POLICY NUMBER: IRG49032

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 10 93**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 1**      □

# *First Specialty Insurance Corporation*

## GENERAL ENDORSEMENT

**IT IS MUTUALLY UNDERSTOOD AND AGREED, THIS POLICY IS HEREBY AMENDED AS INDICATED BY [X]:**

1. [ ] Annual Premium to $

2. [ ] Limit of Liability to $

3. [ ] Named Insured Changed,
As Shown Below

4. [X] Additional Insured(s) or Subject(s)
Of Coverage, Named Below, Added

5. [ ] Exclusion(s), Added

6. [ ] Additional Premium of $

7. [ ] Return Premium of $

8. [ ] Expiration Date to

9. [ ] Retention to $

10. [ ] Insured's Address Changed,
As Shown Below

11. [ ] Additional Insured(s) or Subject(s)
Of Coverage, Named Below, Deleted

12. [ ] Exclusion(s), Deleted

13. [ ]

Effective inception and in consideration of the premium charged, the attached CG 20 10 11 85 Additional Insured – Owners, Lessors or Contractors – (Form B) Endorsement is added to the Policy

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:  1RG49032

Named Insured:    Vineland Construction, Inc.

Endorsement Effective Date:   10/01/2002

**Authorized Representative**

FSIC-4010 (03/99)

POLICY NUMBER:                                          **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**
Doane Pet Care Company (DPC)
210 Westwood Place South, Suite 300
Brentwood, TN 37027

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured and then only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely the negligence or responsibility of the Named Insured